DAVID MARTINEZ, Bar No. 193183
DMartinez@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone:  (310) 552-0130
Facsimile: (310) 229-5800

MARTIN R. LUECK (*pro hac vice* pending)
MRLueck@rkmc.com
EMMETT J. MCMAHON (*pro hac vice* pending)
EJMcMahon@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402-2015
Telephone:  (612) 349-8500
Facsimile: (612) 349-4181

MATTHEW B. MCFARLANE (*pro hac vice* pending)
MBMcFarlane@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
601 Lexington Ave., 34th Floor
New York, NY 10022
Telephone:  (212) 980-7400
Facsimile: (212) 980-7499

Attorneys for Plaintiffs
QUEST DIAGNOSTICS INCORPORATED
and QUEST DIAGNOSTICS NICHOLS INSTITUTE

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUEST DIAGNOSTICS INCORPORATED and QUEST DIAGNOSTICS NICHOLS INSTITUTE,<br><br>Plaintiffs,<br><br>v.<br><br>MYRIAD GENETICS, INC.,<br><br>Defendant. | Case No.  \_\_13-cv-1587_____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED**<br><br>Complaint served:<br>Current response date: |

Plaintiffs Quest Diagnostics Incorporated ("Quest Diagnostics") and Quest Diagnostics Nichols Institute ("Nichols Institute"), by and through their undersigned counsel, for their claim for relief against Defendant Myriad Genetics, Inc. ("Myriad"), allege as follows:

## NATURE OF THIS ACTION

1. Quest Diagnostics and Nichols Institute, (collectively referred to as "Quest") bring this action for a declaration that Quest does not directly or indirectly infringe each of the claims of U.S. Patent Nos. 5,747,282; 5,693,473; 5,709,999; 5,710,001; 5,753,441; 5,837,492; 6,033,857; 7,250,497; 6,083,698; 5,750,400; 5,654,155; 6,951,721; 6,492,109; and 6,051,379 (together, the "patents-in-suit") and that each and every claim of the patents-in-suit is invalid.

## THE PARTIES

2. Quest Diagnostics is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 3 Giralda Farms, Madison, New Jersey 07940. Quest is the world's leading provider of diagnostic information services, and is a pioneer in developing innovative diagnostic tests and advanced healthcare information technology solutions that help improve patient care.

3. Nichols Institute is a corporation organized and existing under the laws of the State of California with its principal place of business at 33608 Ortega Highway, San Juan Capistrano, California 92690. Nichols Institute is a world leader in highly specialized laboratory testing. Over the last three decades, Nichols Institute has pioneered many new tests and technologies and has often been first in providing access to advances in laboratory testing.

4. Upon information and belief, Myriad is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 320 Wakara Way, Salt Lake City, Utah 84108.

**JURISDICTION AND VENUE**

5.     This action arises under the Declaratory Judgment Act, 28 U.S.C §§ 2201 and 2202 and the United States Patent Law, 35 U.S.C. § 100 et seq.  The claims in this lawsuit pertain to non-infringement and invalidity of U.S. patents, and therefore, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

6.     This Court has personal jurisdiction over Myriad because Myriad conducts substantial business in the State of California including in the Central District of California and elsewhere in California. Myriad has made significant strategic investments in the state, and regularly derives value from services provided to California consumers. Myriad employs a significant sales and marketing force in this judicial district, from which it generates significant revenues from sales made in this district. Myriad either employs or intends to employ persons in Los Angeles and Orange counties having the title of "Institutional Account Executive." Upon information and belief, Myriad specifically markets and sells genetic tests related to sequencing and analysis of BRCA1 and BRCA2 genes to citizens of Los Angeles and Orange counties, and throughout the state of California. Upon information and belief, Myriad claims that its BRCA1/BRCA2 genetic tests are covered by one or more of the patents-in-suit in this lawsuit.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400 because Nichols Institute, the testing laboratory where the non-infringing BRCA1/BRCA2 genetic test was developed, and where Quest intends that information obtained from those tests will be analyzed, is located in Orange County California. Therefore, a substantial part of the events giving rise to the claims herein have occurred and are occurring in Orange County. Moreover, Myriad regularly conducts business in this judicial district relating to BRCA1 and BRCA2 genetic testing.

1

**THE PATENTS IN SUIT**

2    8.    U.S. Patent No. 5,747,282 ("the '282 patent"), titled "17Q-LINKED

3    BREAST AND OVARIAN CANCER SUSCEPTIBILITY GENE," issued on May

4    5, 1998. A true and correct copy of the '282 patent is attached as Exhibit 1.

5    9.    Myriad purports to be the exclusive licensee of the '282 patent, and

6    Myriad has asserted that it has the sole right to enforce the '282 patent.

7    10.    U.S. Patent No. 5,693,473, titled ("the '473 patent"), titled "LINKED

8    BREAST AND OVARIAN CANCER SUSCEPTIBILITY GENE," issued on Dec.

9    2, 1997.  A true and correct copy of the '473 patent is attached as Exhibit 2.

10    11.    Myriad has purported to have sufficient rights to enforce the '473 patent.

11    12.    U.S. Patent No. 5,709,999, titled "LINKED BREAST AND OVARIAN

12    CANCER SUSCEPTIBILITY GENE," issued on January 20, 1998 ("the '999

13    patent"). A true and correct copy of the '999 patent is attached as Exhibit 3.

14    13.    Myriad purports to be the exclusive licensee of the '999 patent, and

15    Myriad has asserted that it has the sole right to enforce the '999 patent.

16    14.    U.S. Patent No. 5,710,001 ("the '001 patent"), titled "17Q-LINKED

17    BREAST AND OVARIAN CANCER SUSCEPTIBILITY GENE," issued on Jan.

18    20, 1998.  A true and correct copy of the '001 patent is attached as Exhibit 4.

19    15.    Myriad purports to be the exclusive licensee of the '001 patent, and

20    Myriad has asserted that it has the sole right to enforce the '001 patent.

21    16.    U.S. Patent No. 5,753,441 ("the '441 patent"), titled "17Q-LINKED

22    BREAST AND OVARIAN CANCER SUSCEPTIBILITY GENE," issued on May

23    19, 1998. A true and correct copy of the '441 patent is attached as Exhibit 5.

24    17.    Myriad purports to be the exclusive licensee of the '441 patent, and

25    Myriad has asserted that it has the sole right to enforce the '441 patent.

26    18.    U.S. Patent No. 5,837,492 ("the '492 patent"), titled "CHROMOSOME

27    13-LINKED BREAST CANCER SUSCEPTIBILITY GENE," issued on Nov. 17,

28    1998. A true and correct copy of the '492 patent is attached as Exhibit 6.

19.   Myriad purports to be the exclusive licensee of the '492 patent, and Myriad has asserted that it has the sole right to enforce the '492 patent.

20.   U.S. Patent No. 6,033,857 ("the '857 patent"), titled "CHROMOSOME 13-LINKED BREAST CANCER SUSCEPTIBILITY GENE," issued on Mar. 7, 2000. A true and correct copy of the '857 patent is attached as Exhibit 7.

21.   Myriad purports to be the exclusive licensee of the '857 patent, and Myriad has asserted that it has the sole right to enforce the '857 patent.

22.   U.S. Patent No. 7,250,497 ("the '497 patent"), titled "LARGE DELETIONS IN HUMAN BRCA1 GENE AND USE THEREOF," issued on Jul. 31, 2007. A true and correct copy of the '497 patent is attached as Exhibit 8.

23.   Myriad purports to own the '497 patent.

24.   U.S. Patent No. 6,083,698 ("the '698 patent"), titled "CANCER SUSCEPTIBILITY MUTATIONS OF BRCA1," issued on Jul. 4, 2000.  A true and correct copy of the '698 patent is attached as Exhibit 9.

25.   Myriad purports to be either the assignee or the exclusive licensee of the '698 patent, and Myriad has the sole right to enforce the '698 patent.

26.   U.S. Patent No. 5,750,400 ("the '400 patent"), titled "CODING SEQUENCES OF THE HUMAN BRCA1 GENE," issued on May 12, 1998.  A true and correct copy of the '400 patent is attached as Exhibit 10.

27.   Myriad purports to own the '400 patent.

28.   U.S. Patent No. 5,654,155 ("the '155 patent"), titled "CONSENSUS SEQUENCE OF THE HUMAN BRCA1 GENE," issued on Aug. 5, 1997. A true and correct copy of the '155 patent is attached as Exhibit 11.

29.   Myriad purports to own the '155 patent.

30.   U.S. Patent No. 6,951,721 ("the '721 patent"), titled "METHOD FOR DETERMINING THE HAPLOTYPE OF A HUMAN BRCA1 GENE," issued on Oct. 4, 2005. A true and correct copy of the '721 patent is attached as Exhibit 12.

31.   Myriad purports to own the '721 patent.

32.   U.S. Patent No. 6,492,109 ("the '109 patent"), titled "SUSCEPTIBILITY MUTATION 6495DELGC OF BRCA2," issued on Dec. 10, 2002.   A true and correct copy of the '109 patent is attached as Exhibit 13.

33.   Myriad purports to be either the assignee or the exclusive licensee of the '109 patent, and purports to have the sole right to enforce the '109 patent.

34.   U.S. Patent No. 6,051,379 ("the '379 patent"), titled "CANCER SUSCEPTIBILITY MUTATIONS OF BRCA2," issued on Apr. 18, 2000. A true and correct copy of the '379 patent is attached as Exhibit 14.

35.   Myriad purports to own the '379 patent.

## BACKGROUND

### A. SCREENING ASSAYS FOR GENETIC ABNORMALITIES IN BRCA GENES

36.   BRCA1 and BRCA2 are human genes that encode specific proteins responsible for repairing damaged DNA in cells.  Alterations or mutations in either of those genes may impact a cell's ability to repair DNA damage, leading to additional genetic alterations that can lead to cancer.  Specific inherited mutations in BRCA1 and BRCA2 genes are associated with an increased risk of breast and ovarian cancers.  It is estimated that 55 to 65 percent of women who inherit a harmful *BRCA1* mutation and around 45 percent of women who inherit a harmful *BRCA2* mutation will develop breast cancer by age 70.

37.   BRCA1/BRCA2 screening assays identify particular harmful gene mutations in DNA obtained from a blood or saliva sample. These assays have emerged as an important tool in the diagnosis of a woman's risk of contracting breast and ovarian cancer. BRCA1/BRCA2 screening enables women with a positive test to make an informed decision about medical treatment options, and possibly take steps to reduce their cancer risk.  This screening is particularly valuable for women who have a familial history of breast cancer or who have previously contracted cancer; a significant public health issue given that breast cancer is the most common cancer among American women, with more than

1  200,000 women diagnosed each year.

2     **B. MYRIAD'S HISTORY OF ENFORCING THE PATENTS-IN-SUIT**

3    38. Myriad has asserted that any company that makes, uses, sells or offers to

4  sell genetic tests and related services using the BRCA1 and/or BRCA2 genes, such

5  as the sequencing and analysis of BRCA1 and/or BRCA2 genes, will face a patent

6  infringement lawsuit.

7    39. Before the patents-in-suit issued, other laboratories screened patient

8  DNA samples to assess natural mutations in BRCA1 and BRCA2 genes and

9  correlate those mutations with a risk of developing breast or ovarian cancer. For

10  example, throughout the mid- and late-1990s, researchers at the Genetics

11  Diagnostic Testing Laboratory at the University of Pennsylvania performed

12  BRCA1 and BRCA2 genetic testing services for hundreds of patients each year.

13  Researchers at the Molecular Genetics Laboratory at New York University also

14  performed BRCA1 and BRCA2 genetic testing.

15    40. Myriad sent cease and desist letters to those other laboratories,

16  threatening patent infringement lawsuits unless that activity stopped. In response to

17  Myriad's threats, these laboratories, including the Genetics Diagnostic Testing

18  Laboratory at the University of Pennsylvania and the Molecular Genetics

19  Laboratory at New York University, stopped performing BRCA1 and BRCA2

20  testing and analysis on or around 1999. As a result, Myriad became the only

21  provider of BRCA1 and BRCA2 related genetic screening and testing services in

22  the United States.

23    41. In 2009, the American Civil Liberties Union and an organization called

24  PubPat, acting on behalf medical associations, doctors, universities and individuals

25  named as plaintiffs, sued Myriad Genetics in the Southern District of New York,

26  seeking a declaratory judgment that certain claims among the patents-in-suit were

27  invalid for failing to meet one or more requirements of the Patent Act (hereinafter,

28  the "ACLU Case"). This case ultimately led to a decision from the United States

Supreme Court in June of 2013.

42.     The plaintiffs in the ACLU Case sought a declaration that numerous composition and method claims in patents owned or exclusively licensed by Myriad (including claims from several of the patents-in-suit in the present action) were invalid for claiming ineligible subject matter. The composition claims at issue in the ACLU Case covered isolated DNA from the BRCA1 and BRCA2 genes, as well as synthesized complementary DNA ("cDNA"). The method claims at issue were drawn to the process of identifying mutations within BRCA1 or BRCA2 using well-known techniques, such as gene sequencing. The district court found all of the composition and method claims at issue invalid.

43.     Myriad appealed the district court's decision to the Federal Circuit, and the Federal Circuit ultimately issued an opinion on August 16, 2012, affirming-in-part and reversing-in-part. Specifically, the Federal Circuit reversed the District Court with respect to the composition claims, finding that the claims for isolated DNA and cDNA were patent eligible. However, the Federal Circuit affirmed the District Court's finding that the method claims were invalid. In so doing, the Federal Circuit invalidated the following method claims from the patents-in-suit: claim 1 of the '999 patent, claim 1 of the '441 patent, claims 1 and 2 of the '857 patent. These claims are directed to methods of using human BRCA1 and BRCA2 genes to detect alterations or to screen for alterations. The Federal Circuit agreed that those claims are directed to patent-ineligible subject matter, do not satisfy the requirements of 35 U.S.C. § 101, and are therefore invalid. *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Offic*e, 689 F.3d 1303, 1329 (Fed. Cir. 2012).

44.     The plaintiffs in the ACLU Case appealed to the Supreme Court, arguing that the Federal Circuit was wrong to conclude that the composition claims directed to isolated DNA and cDNA contained patent eligible subject matter and were valid.

45.     Myriad did not appeal the Federal Circuit's holding that the method

1    claims are patent ineligible under § 101. Accordingly, those method claims are, and

2    remain, invalid.

3      46. On June 13, 2013, the Supreme Court invalidated certain composition

4    claims in Myriad's patents on appeal. In its decision, the Supreme Court

5    unanimously held that isolated DNA is not patent eligible and, therefore, at least

6    claims 1 and 5 of the '282 patent and claims 1 and 6 of the '492 patent directed to

7    isolated human BRCA1 and BRCA2 genes are invalid under 35 U.S.C. § 101.

8    *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107

9    (2013).

10      47. The Supreme Court also held that, under some circumstances,

11    composition claims for synthetically created cDNA are patent eligible. The

12    Supreme Court explained

> cDNA does not present the same obstacles to patentability as naturally occurring, isolated DNA segments. As already explained, creation of a cDNA sequence from mRNA results in an exons-only molecule that is not naturally occurring. Petitioners concede that cDNA differs from natural DNA in that "the non-coding regions have been removed." They nevertheless argue that cDNA is not patent eligible because "[t]he nucleotide sequence of cDNA is dictated by nature, not by the lab technician." That may be so, but the lab technician unquestionably creates something new when cDNA is made. cDNA retains the naturally occurring exons of DNA, but it is distinct from the DNA from which it was derived. As a result, cDNA is not a "product of nature" and is patent eligible under §101, except insofar as very short series of DNA may have no intervening introns to remove when creating cDNA. In that situation, a short strand of cDNA may be indistinguishable from natural DNA.

23    *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107

24    (2013). As stated by the Supreme Court, synthetically created cDNA that is

25    indistinguishable from natural DNA sequences is not patent eligible.

26      48. After the Supreme Court decision, several entities announced that they

27    would begin offering genetic tests and related services that included sequencing and

28    analysis of the BRCA1 and/or BRCA2 genes.

49.   On June 13, 2013, Ambry Genetics Corporation announced that it would begin offering BRCA1 and BRCA2 testing and analysis services.

50.   In response, Myriad sued Ambry Genetics Corporation in the United States District Court for the District of Utah on July 9, 2013, alleging infringement of certain claims of the '999, '282. '441, '721, 155', '400, '497, '492, '857, and '379 patents. *See Univ. of Utah Research Found. v. Ambry Genetics, Inc*., No. 2: 13-cv-000640 (D. Utah filed July 9, 2013).

51.   On June 13, 2013, Gene by Gene Limited announced its intention to begin offering BRCA1 and BRCA2 testing and analysis services to the public.

52.   In response, Myriad sued Gene by Gene Limited in the United States District Court for the District of Utah on July 10, 2013, alleging infringement of certain claims of the '999, '282. '441, '721, 155', '400, '497, '492, and '857 patents. *Univ. of Utah Research Found, v. Gene by Gene*, No. 2: 13-cv-000640 (D. Utah filed July 10, 2013).]

53.   Myriad's aggressive conduct has deterred other competitors from entering the BRCA1/BRCA2 genetic testing market for fear of being sued. For example, on June 13, 2013, Pathway Genomics announced plans to offer testing for BRCA1 and BRCA2. However, after Myriad filed suits against Ambry Genetics Corp. and Gene by Gene limited, Pathway Genomics stated that it is delaying launch of those tests.

## C. QUEST'S   BRCA1/BRCA2   GENETIC   TESTING   COMMERCIAL OFFERINGS

54.   Quest Diagnostics is the world's leading provider of diagnostic information services, and is the world's leader in cancer diagnostics, which include, among other approaches, genetic screening assays to detect alterations in naturally occurring genes.

55.   After years of research and development, and a financial commitment of millions of dollars, Quest will soon commercially launch of a novel two-part assay

to detect hereditary alterations in two human genes, BRCA1 and BRCA2, that correlate with an increased risk for breast and/or ovarian cancer ("Quest's BRCA Assay"). The types of hereditary alterations detected by Quest's BRCA Assay include alterations in DNA copy number, deletions, duplications or rearrangements in BRCA1 and BRCA2. After launch, Quest's BRCA Assay will be made available to doctors and patients as part of the complete portfolio Quest offers as part of its diagnostic testing services.

56. Quest's BRCA Assay does not make or use cloned DNA, replicative cloning vectors, expression systems or host cells comprising BRCA1 or BRCA2 DNA, does not make or use BRCA1 or BRCA2 polypeptides, and does not make use of any BRCA1 or BRCA2 specific primers—subject matter covered by various claims of the patents-in suit.

57. On June 13, 2013, Quest publicly announced that it planned to market its BRCA Assay. Following this announcement and Myriad's suits against Ambry and Gene by Gene, several commentators have publicly speculated that Quest may be sued by Myriad for patent infringement.

### D. MYRIAD'S CONTINUED AGGRESSIVE ENFORCEMENT STRATEGY

58. Myriad's conduct, including Myriad's litigation history, threatens Quest's legal rights and ability to market Quest's BRCA Assay.

59. Myriad's conduct demonstrates that it intends to continue aggressively enforcing its patent portfolio. Myriad has explained that it will vigorously defend method claims that cover its BRACAnalysis testing against competitors who launch competing tests. Even after the prior court decisions invalidating claims from several of Myriad's patents, Myriad has emphasized the alleged strength of its patent portfolio and claimed that its BRACAnalysis testing is covered by 24 valid and enforceable patents.

60. Myriad has developed a marketing strategy designed to maintain and even expand its market share with respect to BRCA1 and BRCA2 testing and

analysis. Competitors like Quest that enter the BRCA1/BRCA2 testing market are a threat to Myriad.

61.   Quest, as the largest entrant to the BRCA1/BRCA2 genetic testing market since the Supreme Court's June decision, has specific reason to believe that it will be the target of a patent infringement lawsuit from Myriad. For example, on July 10, 2013, and only one day after Myriad sued Ambry and the same day it sued Gene by Gene,  Nicolas J. Conti, PhD, Vice President Licensing and Alliances for Quest, conferred with Sam LaBrie, Vice President of Corporate Development of Myriad RBM.

62.   Mr. LaBrie knew that Dr. Conti was a representative of Quest.  He knew that, unless told otherwise, his comments would be perceived by Dr. Conti and Quest as representative of the positions of Myriad.

63.   Mr. LaBrie explained Myriad's business tactics and strategy.   His detailed discussion about Myriad's tactics and strategy, including marketing and pricing strategy, made it clear to Dr. Conti that Mr. LaBrie was fully aware of Myriad's positions regarding any laboratories that would offer tests for BRCA1 or BRCA2.  It was also clear to Dr. Conti that Mr. LaBrie knew Myriad's strategy for responding to any companies that offered BRCA1 and BRCA2 tests without first seeking permission from Myriad.

64.   Mr. LaBrie specifically discussed with Dr. Conti the status of the Myriad patents after the Supreme Court invalidated some of those claims.   In that conversation, Mr. LaBrie indicated that the public does not understand how strong Myriad's patent claims are.  He further stated that the notion that Quest would enter the market "scared the [Myriad] team" and he confirmed that Myriad would be "sending letters" to any labs who offered BRCA1 or BRCA2 tests.  When making that statement, Mr. LaBrie knew that Quest was planning to offer some sort of BRCA testing.  Therefore, upon information and belief, he intended to advise that Quest would also receive a letter from Myriad objecting to Quest's offer of those

tests. Moreover, the above statements applied to any BRCA1 and BRCA2 testing and related services. When making the above statements, Mr. LaBrie did not concede that any BRCA1 or BRCA2 tests would not infringe.

65. Upon information and belief, when Mr. LaBrie made the above statements directly to Dr. Conti, he knew that Dr. Conti, as a representative of Quest, would understand that Myriad would promptly assert its patents against Quest in conjunction with the launch of Quest's BRCA 1 and BRCA2 tests and related services.

66. Quest has made a substantial research and development investment in providing Quest's BRCA Assay—an accurate and cost-effective diagnostic test for analyzing BRCA1 and BRCA2 genes in a patient sample. Accordingly, Quest seeks and is lawfully entitled to a declaratory judgment that each of the claims of the patents-in-suit is invalid and/or not infringed. There is a definite, concrete, real and substantial controversy between Quest and Myriad of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of the same. A declaration of rights between the parties is both appropriate and necessary to confirm Quest's present understanding that it may continue pursuing its lawful activities unhindered by the patents-in-suit.

## COUNT I

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '282 PATENT

67. Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-66.

68. Quest seeks a declaration that it has not directly or indirectly infringed and is not directly or indirectly infringing any claim of the '282 patent through any activities related to Quest's BRCA Assay.

69. An actual controversy exists between Quest and Myriad with respect to the non-infringement of the claims of the '282 patent, and a judicial declaration to

1  this effect is appropriate and necessary.

2  **COUNT II**

3  **DECLARATORY JUDGMENT OF INVALIDITY OF THE '282 PATENT**

4      70.   Quest re-alleges and incorporates by reference the allegations contained

5  in paragraphs 1-69.

6      71.   Upon information and belief, each claim of the '282 patent fails to meet

7  one or more of the statutory requirements and/or conditions for patentability under

8  the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not

9  limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created

10  doctrine of obviousness-type double patenting.

11      72.   An actual controversy exists between Quest and Myriad with respect to

12  the invalidity of the claims of the '282 patent, and a judicial declaration to this

13  effect is appropriate and necessary.

14  **COUNT III**

15  **DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '473**

16  **PATENT**

17      73.   Quest re-alleges and incorporates by reference the allegations contained

18  in paragraphs 1-72.

19      74.   Quest seeks a declaration that it has not directly or indirectly infringed

20  and is not directly or indirectly infringing any claim of the '473 patent through any

21  activities related to Quest's BRCA Assays.

22      75.   An actual controversy exists between Quest and Myriad with respect to

23  the non-infringement of the claims of the '473 patent, and a judicial declaration to

24  this effect is appropriate and necessary.

25  **COUNT IV**

26  **DECLARATORY JUDGMENT OF INVALIDITY OF THE '473 PATENT**

27      76.   Quest re-alleges and incorporates by reference the allegations contained

28  in paragraphs 1-75.

77.   Upon information and belief, each claim of the '473 patent fails to meet one or more of the statutory requirements and/or conditions for patentability under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created doctrine of obviousness-type double patenting.

78.   An actual controversy exists between Quest and Myriad with respect to the invalidity of the claims of the '473 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT V

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '999 PATENT

79.   Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-78.

80.   Quest seeks a declaration that it has not directly or indirectly infringed and is not directly or indirectly infringing any claim of the '999 patent through any activities related to Quest's BRCA Assays.

81.   An actual controversy exists between Quest and Myriad with respect to the non-infringement of the claims of the '999 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT VI

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '999 PATENT

82.   Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-81.

83.   Upon information and belief, each claim of the '999 patent fails to meet one or more of the statutory requirements and/or conditions for patentability under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created doctrine of obviousness-type double patenting.

84.     An actual controversy exists between Quest and Myriad with respect to the invalidity of the claims of the '999 patent, and a judicial declaration to this effect is appropriate and necessary.

**COUNT VII**

**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '001 PATENT**

85.     Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-84.

86.     Quest seeks a declaration that it has not directly or indirectly infringed and is not directly or indirectly infringing any claim of the '001 patent through any activities related to Quest's BRCA Assays.

87.     An actual controversy exists between Quest and Myriad with respect to the non-infringement of the claims of the '001 patent, and a judicial declaration to this effect is appropriate and necessary.

**COUNT VIII**

**DECLARATORY JUDGMENT OF INVALIDITY OF THE '001 PATENT**

88.     Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-87.

89.     Upon information and belief, each claim of the '001 patent fails to meet one or more of the statutory requirements and/or conditions for patentability under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created doctrine of obviousness-type double patenting.

90.     An actual controversy exists between Quest and Myriad with respect to the invalidity of the claims of the '001 patent, and a judicial declaration to this effect is appropriate and necessary.

**COUNT IX**

**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '441**

**PATENT**

91.   Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-90.

92.   Quest seeks a declaration that it has not directly or indirectly infringed and is not directly or indirectly infringing any claim of the '441 patent through any activities related to Quest's BRCA Assays.

93.   An actual controversy exists between Quest and Myriad with respect to the non-infringement of the claims of the '441 patent, and a judicial declaration to this effect is appropriate and necessary.

**COUNT X**

**DECLARATORY JUDGMENT OF INVALIDITY OF THE '441 PATENT**

94.   Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-93.

95.   Upon information and belief, each claim of the '441 patent fails to meet one or more of the statutory requirements and/or conditions for patentability under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created doctrine of obviousness-type double patenting.

96.   An actual controversy exists between Quest and Myriad with respect to the invalidity of the claims of the '441 patent, and a judicial declaration to this effect is appropriate and necessary.

/ / /

/ / /

/ / /

**COUNT XI**

**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '492 PATENT**

97.   Quest re-alleges and incorporates by reference the allegations contained

in paragraphs 1-96.

98.   Quest seeks a declaration that it has not directly or indirectly infringed and is not directly or indirectly infringing any claim of the '492 patent through any activities related Quest's BRCA Assays.

99.   An actual controversy exists between Quest and Myriad with respect to the non-infringement of the claims of the '492 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XII

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '492 PATENT

100.   Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-99.

101.   Upon information and belief, each claim of the '492 patent fails to meet one or more of the statutory requirements and/or conditions for patentability under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created doctrine of obviousness-type double patenting.

102.   An actual controversy exists between Quest and Myriad with respect to the invalidity of the claims of the '492 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XIII

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '857 PATENT

103.   Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-102.

104.   Quest seeks a declaration that it has not directly or indirectly infringed and is not directly or indirectly infringing any claim of the '857 patent through any activities related Quest's BRCA Assays.

105.  An actual controversy exists between Quest and Myriad with respect to the non-infringement of the claims of the '857 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XIV

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '857 PATENT

106.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-105.

107.  Upon information and belief, each claim of the '857 patent fails to meet one or more of the statutory requirements and/or conditions for patentability under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created doctrine of obviousness-type double patenting.

108.  An actual controversy exists between Quest and Myriad with respect to the invalidity of the claims of the '857 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XV

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '497 PATENT

109.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-108.

110.  Quest seeks a declaration that it has not directly or indirectly infringed and is not directly or indirectly infringing any claim of the '497 patent through any activities related Quest's BRCA Assays.

/ / /

/ / /

111.  An actual controversy exists between Quest and Myriad with respect to the non-infringement of the claims of the '497 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XVI

### DECLARATORY JUDGMENT OF INVALIDITY OF THE '497 PATENT

112.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-111.

113.  Upon information and belief, each claim of the '497 patent fails to meet one or more of the statutory requirements and/or conditions for patentability under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created doctrine of obviousness-type double patenting.

114.  An actual controversy exists between Quest and Myriad with respect to the invalidity of the claims of the '497 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XVII

### DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '698 PATENT

115.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-114.

116.  Quest seeks a declaration that it has not directly or indirectly infringed and is not directly or indirectly infringing any claim of the '698 patent through any activities related Quest's BRCA Assays.

117.  An actual controversy exists between Quest and Myriad with respect to the non-infringement of the claims of the '698 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XVIII

### DECLARATORY JUDGMENT OF INVALIDITY OF THE '698 PATENT

118.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-117.

119.  Upon information and belief, each claim of the '698 patent fails to meet one or more of the statutory requirements and/or conditions for patentability under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created doctrine of obviousness-type double patenting.

120.  An actual controversy exists between Quest and Myriad with respect to the invalidity of the claims of the '497 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XIX

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '400 PATENT

121.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-120.

122.  Quest seeks a declaration that it has not directly or indirectly infringed and is not directly or indirectly infringing any claim of the '400 patent through any activities related to Quest's BRCA Assays.

123.  An actual controversy exists between Quest and Myriad with respect to the non-infringement of the claims of the '400 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XX

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '400 PATENT

124.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-123.

125.  Upon information and belief, each claim of the '400 patent fails to meet one or more of the statutory requirements and/or conditions for patentability under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created doctrine of obviousness-type double patenting.

126.  An actual controversy exists between Quest and Myriad with respect to the invalidity of the claims of the '400 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XXI

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '155 PATENT

127.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-126.

128.  Quest seeks a declaration that it has not directly or indirectly infringed and is not directly or indirectly infringing any claim of the '155 patent through any activities related to Quest's BRCA Assays.

129.  An actual controversy exists between Quest and Myriad with respect to the non-infringement of the claims of the '155 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XXII

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '155 PATENT

130.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-1329.

131.  Upon information and belief, each claim of the '155 patent fails to meet one or more of the statutory requirements and/or conditions for patentability under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created doctrine of obviousness-type double patenting.

132.  An actual controversy exists between Quest and Myriad with respect to the invalidity of the claims of the '155 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XXIII

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '721

**PATENT**

133.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-132.

134.  Quest seeks a declaration that it has not directly or indirectly infringed and is not directly or indirectly infringing any claim of the '721 patent through any activities related to Quest's BRCA Assays.

135.  An actual controversy exists between Quest and Myriad with respect to the non-infringement of the claims of the '721 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XXIV

### DECLARATORY JUDGMENT OF INVALIDITY OF THE '721 PATENT

136.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-135.

137.  Upon information and belief, each claim of the '721 patent fails to meet one or more of the statutory requirements and/or conditions for patentability under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created doctrine of obviousness-type double patenting.

138.  An actual controversy exists between Quest and Myriad with respect to the invalidity of the claims of the '721 patent, and a judicial declaration to this effect is appropriate and necessary.

/ / /

/ / /

## COUNT XXV

### DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '109 PATENT

139.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-138.

140.  Quest seeks a declaration that it has not directly or indirectly infringed and is not directly or indirectly infringing any claim of the '109 patent through any activities related to Quest's BRCA Assays.

141.  An actual controversy exists between Quest and Myriad with respect to the non-infringement of the claims of the '109 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XXVI

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '109 PATENT

142.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-141.

143.  Upon information and belief, each claim of the '109 patent fails to meet one or more of the statutory requirements and/or conditions for patentability under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created doctrine of obviousness-type double patenting.

144.  An actual controversy exists between Quest and Myriad with respect to the invalidity of the claims of the '109 patent, and a judicial declaration to this effect is appropriate and necessary.

## COUNT XXVII

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '379 PATENT

145.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-144.

146.  Quest seeks a declaration that it has not directly or indirectly infringed and is not directly or indirectly infringing any claim of the '379 patent through any activities related to Quest's BRCA Assays.

147.  An actual controversy exists between Quest and Myriad with respect to the non-infringement of the claims of the '379 patent, and a judicial declaration to this effect is appropriate and necessary.

### COUNT XXVIII

### DECLARATORY JUDGMENT OF INVALIDITY OF THE '379 PATENT

148.  Quest re-alleges and incorporates by reference the allegations contained in paragraphs 1-147.

149.  Upon information and belief, each claim of the '379 patent fails to meet one or more of the statutory requirements and/or conditions for patentability under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., including but not limited to 35 U.S.C. §§ 10l-103 and 112, and/or under the judicially created doctrine of obviousness-type double patenting.

150.  An actual controversy exists between Quest and Myriad with respect to the invalidity of the claims of the '379 patent, and a judicial declaration to this effect is appropriate and necessary.

### PRAYER FOR RELIEF

WHEREFORE, Quest respectfully requests that the Court enter judgment, as follows:

    a.    That each of the claims of the patents-in-suit is invalid;

    b.    That Quest has not infringed either directly or indirectly, and is not infringing either directly or indirectly, based on any activities related to Quest's BRCA Assay;

    c.    This case is exceptional such that, pursuant to 35 U.S.C. § 285, the Court award Quest its attorneys' fees and costs for bringing and prosecuting this action; and

    d.    That Quest be granted such other and further relief as this Court may deem just and proper.

75412734.4

COMPLAINT FOR DECLARATORY JUDGMENT

1    October 10, 2013                 Respectfully submitted,

2                                          ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

3

4                                         By: _/s/ David Martinez_____

5                                             DAVID MARTINEZ

6                                             Attorneys for Plaintiffs
                                            QUEST DIAGNOSTICS

7                                             INCORPORATED and QUEST
                                            DIAGNOSTICS NICHOLS INSTITUTE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2

3

4

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38-1 of this Court, Plaintiffs hereby demand a trial jury as to all issues so triable.

5

6

October 10, 2013                    Respectfully submitted,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

7

8

9

By:   /s/ David Martinez
         DAVID MARTINEZ

10

11

12

Attorneys for Plaintiffs
QUEST DIAGNOSTICS
INCORPORATED and QUEST
DIAGNOSTICS NICHOLS INSTITUTE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28