1   DAVID MARTINEZ, Bar No. 193183
    DMartinez@rkmc.com
2   **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
    2049 Century Park East, Suite 3400
3   Los Angeles, CA 90067-3208
    Telephone: (310) 552-0130
4   Facsimile:  (310) 229-5800

5   MARTIN R. LUECK (admitted *pro hac vice*)
    MRLueck@rkmc.com
6   EMMETT J. MCMAHON (admitted *pro hac vice*)
    EJMcMahon@rkmc.com
7   **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
    800 LaSalle Avenue
8   2800 LaSalle Plaza
    Minneapolis, MN 55402-2015
9   Telephone:  (612) 349-8500
    Facsimile:    (612) 349-4181
10
    MATTHEW B. MCFARLANE (admitted *pro hac vice*)
11  MBMcFarlane@rkmc.com
    **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
12  601 Lexington Ave., 34th Floor
    New York, NY 10022
13  Telephone:  (212) 980-7400
    Facsimile:    (212) 980-7499
14
    Attorneys for Plaintiffs
15  QUEST DIAGNOSTICS INCORPORATED
    and QUEST DIAGNOSTICS NICHOLS INSTITUTE
16
                **IN THE UNITED STATES DISTRICT COURT**
17
                   **CENTRAL DISTRICT OF CALIFORNIA**
18

| | |
|---|---|
| 19 QUEST DIAGNOSTICS INCORPORATED and QUEST DIAGNOSTICS NICHOLS INSTITUTE, | Case No. 13-CV-1587-AG (DFMx) |
| 20 | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MYRIAD'S MOTION TO DISMISS UNDER RULE 12(B)(1) OR, IN THE ALTERNATIVE, TO TRANSFER QUEST'S DECLARATORY JUDGMENT ACTION** |
| 21 Plaintiffs, | |
| 22 | |
| 23 v. | |
| 24 MYRIAD GENETICS, INC., | Date:    December 16, 2013 |
| 25 | Time:    10:00 a.m. |
| Defendant. | Ctrm:    10D |
| 26 | Judge:   Hon. Andrew J. Guilford |
| 27 | [Declarations of Emmett J. McMahon, Jay G. Wohlgemuth, Nicholas J. Conti, and Wilson Conde filed concurrently herewith] |
| 28 | |

MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ...................................................................................1

   A.   Myriad's Lengthy History of Aggressively Enforcing its
      Patents ............................................................................................1

      1.   Myriad's Threats to Laboratories Offering BRCA1/2
         Testing and Services .................................................................2

      2.   The Supreme Court Invalidated Several of Myriad's
         Patent Claims Earlier this Year .................................................2

      3.   Myriad Aggressively Asserts Its Patents Even After the
         Supreme Court's Decision .........................................................3

   B.   Quest Developed a Unique BRCA1/2 Genetic Test.....................5

   C.   Quest Discussed BRCA1/2 Testing with Myriad..........................5

   D.   Quest Filed the California Action and Entered the BRCA1/2
      Testing Market .............................................................................7

   E.   Myriad Filed a Duplicative Action in Utah .................................7

III.  ARGUMENT .........................................................................................8

   A.   Jurisdiction in this Court is Proper .............................................8

      1.   Myriad Does Not Challenge This Court's Subject Matter
         Jurisdiction ...............................................................................8

      2.   This Court Should Exercise Jurisdiction over this Case.......11

         a.   The First-to-File Rule Applies and Therefore the
            California Action is Favored Over the Utah Action...................12

         b.   No Exception to the First-to-File Rule Applies to
            the Facts of This Case...............................................................13

            i.   Quest Did Not File an Anticipatory Suit.............................13

            ii.  Quest Did Not File the California Action in
              Bad Faith ..........................................................................16

            iii. Quest Is Not Forum Shopping.............................................16

         c.   The Convenience Factors Do Not Weigh in Favor
            of Dismissing this Action..........................................................17

i

MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION

B.   The Proper Venue for this Suit is in California, and Therefore the Case Should Not be Transferred under 28 U.S.C. § 1404 to Utah ..................................................................................... 20

1.   The Convenience of the Parties and Witnesses Favors California ............................................................................... 20

2.   Quest's Choice of Forum Should Be Given Strong Deference ................................................................................. 21

3.   The Ease of Access to the Evidence Favors California ...................... 22

4.   This Forum is More Familiar with the Applicable Law ..................... 22

5.   The Possibility of Consolidating This Case with Other Patent Infringement Actions in Utah Does Not Favor Transfer ......................................................................................... 23

6.   Local Interests in This Controversy Favor This Forum ...................... 23

7.   This Forum Is Less Congested than Utah ............................................ 23

IV.   CONCLUSION ........................................................................................... 24

MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*A10 Networks, Inc. v. Brocade Comms., Inc.,*

5
　　SACV11-01378, 2011 U.S. Dist. LEXIS 155697 (C.D. Cal. Nov. 8,
　　2011)................................................................................................. 18, 22

6

*Alltrade, Inc. v. Uniweld Products, Inc.,*

7
　　946 F.2d 622 (9th Cir. 1991)...................................................................... 12

8

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,*
　　133 S.Ct. 2107, 186 L. Ed. 2d 124 (2013) ............................................... 2, 3

9

*Barnes & Noble, Inc. v. LSI Corp.,*

10
　　823 F. Supp. 2d 980 (N.D. Cal. 2011) ........................................................ 17

11

*Cardoza v. T-Mobile USA Inc.,*
　　No. 08-5120, 2009 U.S. Dist. LEXIS 25895 (N.D. Cal. Mar. 18,

12
　　2009)............................................................................................................ 16

13

*Catch Curve, Inc. v. Venali, Inc.,*
　　No. CV 05-04820, 2006 U.S. Dist. LEXIS 96379 (C.D. Cal. Feb.

14
　　27, 2006)...................................................................................................... 23

15

*Church of Scientology v. U.S. Dep't. of the Army,*
　　611 F.2d 738 (9th Cir. 1979)....................................................................... 13

16

*Cingular Wireless LLC v. Freedom Wireless, Inc.,*

17
　　2007 U.S. Dist. LEXIS 47957 (D. Ariz. 2007)............................................ 9

18

*Compression Tech. Solutions LLC v. EMC Corp.,*
　　No. 4:11-cv-1579, 2012 U.S. Dist. LEXIS 48887 (E.D. Mo. April 6,

19
　　2012)............................................................................................................ 23

20

*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.,*
　　142 F.3d 1266 (Fed. Cir. 1998).............................................................. 10, 13

21

*Datatreasury Corp v. Capital One Fin, Corp.,*

22
　　No. 6:11-cv-92, U.S. Dist. LEXIS 114453 (E.D. Tex. Jan 7. 2012) ................ 23

23

*Decker Coal Co. v. Commonwealth Edison Co.,*
　　805 F.2d 834 (9th Cir. 1986)....................................................................... 20

24

*Digitech Image Techs., LLC v. Leica Camera AG*, No. SACV12-

25
　　01677,
　　2012 U.S. Dist. LEXIS 172959 (C.D. Cal. Dec. 5, 2012) ..................... 17, 22

26

*Easton-Bell Sports, Inc. v. E.I. Dupont de Nemours & Co.,*

27
　　No. 13-cv-283, 2013 U.S. Dist. LEXIS 43832 (N.D. Cal. March 26,
　　2013)............................................................................................................ 22

28

iii

*Elecs. for Imaging, Inc. v. Coyle*,
  394 F.3d 1341 (Fed. Cir. 2005)..................................................................12, 13

*Expert Microsystems, Inc. v. Univ. of Chicago Arch Dev. Corp.*,
  No. CIV. 09-586, 2009 U.S. Dist. LEXIS 68782 (E.D. Cal. Aug. 5,
  2006)............................................................................................................21

*First Fishery Dev. Serv. v. Lane Labs USA*,
  No. CIV 97-1069, 1997 U.S. Dist. LEXIS 11231 (S.D. Cal. July 21,
  1997)............................................................................................................15

*Genentech, Inc. v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993)..........................................12, 13, 17, 18

*Goodyear Tire & Rubber Co v. Releasomers, Inc.*,
  824 F.2d 953 (Fed. Cir. 1987)..........................................................11

*Guthy-Renker Fitness, LLC v. ICON Health & Fitness, Inc.*,
  179 F.R.D. 264 (C.D. Cal. 1998) ................................................11, 14

*In re Eli Lilly and Co.*,
  No. 13-164 (Fed. Cir. Oct. 18, 2013) ..........................................19

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)..................................................22

*Inherent.com v. Martindale-Hubbell*,
  420 F.Supp.2d 1093 (N.D. Cal. 2006) ....................................13, 14, 20

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,
  544 F. Supp. 2d 949 (N.D. Cal. 2008) ....................................13, 14

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000)......................................................20

*K&F Mfg. Co. v. Western Litho Plate & Supply Co.*,
  831 F. Supp. 661 (N.D. Ind. 1993)............................................17

*Kasey v. Molybdenum Corp.*,
  408 F.2d 16 (9th Cir. 1969)........................................................23

*Manuel v. Convergys Corp.*,
  430 F.3d 1132 (11th Cir. 2005)..................................................14

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
  312 U.S. 270, 61 S. Ct. 510, 85 L. Ed. 826 (1941) ....................8

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007)..........8, 9

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
  518 F.3d 897 (Fed. Cir. 2008)....................................................8, 11

*Monolithic Power Sys., Inc. v. Micro Int'l Ltd.*,
   No. 07-cv-2363, 2007 U.S. Dist. LEXIS 61961 (N.D. Cal. Aug. 13,
   2007)............................................................................................................. 9

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Payless ShoeSource,
   Inc.*, No. 11-cv-1892, 2012 U.S. Dist. LEXIS 112346 (N.D. Cal.
   Aug. 9, 2012)............................................................................................. 16

*Secured Mail Solutions, LLC v. Advanced Image Direct, LLC*,
   SACV 12-0190, 2013 U.S. Dist. LEXIS 150785 (C.D. Cal. Jan 20,
   2013)......................................................................................................... 21

*Securities Investor Protection Corp. v. Vigman*,
   764 F.2d 1309 (9th Cir. 1985)................................................................. 21

*Smith v. McIver*,
   22 U.S. 532 (1824) ................................................................................. 12

*Sony Computer Entm't Am. Inc. v. Am. Med. Response, Inc.*,
   No. C06-06603, 2007 U.S. Dist. LEXIS 24294 (N.D. Cal. March
   13, 2007)................................................................................................. 15

*Teledyne Techs., Inc. v. Harris Corp.*,
   No. 11-cv-00139, 2011 U.S. Dist. LEXIS 71370 (C.D. Cal. July 1,
   2011)........................................................................................................ 15

*Ven-Fuel, Inc. v. Department of Treasury*,
   673 F.2d 1194 (11th Cir. 1982).............................................................. 15

*Wilton v. Seven Falls Co.*,
   515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995)................... 12

*Xoxide, Inc. v. Ford Motor Co.*,
   448 F. Supp. 2d 1188 (C.D. Cal. 2006) ................................................. 14

**Statutes**

28 U.S.C. § 1404.................................................................................... 20, 21

35 U.S.C. §101.............................................................................................. 3

**Other Authorities**

H.R. 628, 111th Cong. (1st Sess. 2009) .................................................... 22

Pilot Program in Certain District Courts Act of 2010,
   Pub. L. No. 111-349 § 1, 124 Stat. 3674 (2011).................................... 22

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................... 1

v

## I.    INTRODUCTION

Myriad Genetics, Inc.'s Motion to Dismiss or, in the Alternative, to Transfer must be denied.  Although it moves pursuant to Rule 12(b)(1), Myriad Genetics, Inc. ("Myriad") offers no evidence to properly contest Quest Diagnostics Incorporated's and Quest Diagnostic Nichols Institute's (together, "Quest") detailed jurisdictional allegations.  Indeed, Myriad's argument that there was a "race to the courthouse" admits the presence of an immediate and substantial controversy between the parties and demonstrates the existence of this Court's jurisdiction.

There is also no basis to disregard Quest's first-to-file status or ignore the strong presumption that attaches to Quest's choice of forum.  Myriad wrongly argues that Utah would be more convenient because five of thirty-four inventors supposedly reside there, and because the Utah court has four months of experience in cases with different defendants, different accused products, and different non-infringement defenses. In fact, Utah will be far less convenient.  Quest developed the genetic tests at issue in this judicial district, performs those tests exclusively in this judicial district, the vast majority of relevant documents and witnesses are located in this judicial district, and one of the plaintiffs maintains its headquarters in this judicial district.  Finally, this Court's local patent rules, participation in the Patent Pilot Program, and its much faster time to trial weigh heavily in favor of keeping this case in this Court, rather than the District of Utah.

## II.   BACKGROUND

### A.    Myriad's Lengthy History of Aggressively Enforcing its Patents.

Myriad purports to be the owner or exclusive licensee of numerous patents, including the fourteen patents-in-suit,[1] related to two human genes known as BRCA1 and BRCA2 (collectively, "BRCA1/2").  *See* Dkt. No. 20-1 at p. 3.

---

[1] Plaintiffs seek a declaration of noninfringement and invalidity of the following fourteen patents: U.S. Patent Nos. 5,747,282; 5,693,473; 5,709,999; 5,710,001; 5,753,441; 5,837,492; 6,033,857; 7,250,497; 6,083,698; 5,750,400; 5,654,155; 6,951,721; 6,492,109; and 6,051,379 (together, the "patents-in-suit").

MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION

Specific mutations in the BRCA1/2 genes are associated with an increased risk of breast and/or ovarian cancer. *See* Declaration of Jay G. Wohlgemuth, M.D., ¶ 6 ("Wohlgemuth Dec.")[2]. For more than fifteen years, Myriad has aggressively enforced those patents, threatening researchers and companies that offer genetic tests or services related to analysis of the BRCA1/2 genes with patent infringement lawsuits.

### 1. Myriad's Threats to Laboratories Offering BRCA1/2 Testing and Services.

Before the patents-in-suit issued, other laboratories within the United States offered BRCA1/2 genetic testing services to patients. *See* Dkt. No. 1, Compl., ¶ 39. For example, researchers at the Genetics Diagnostic Testing Laboratory at the University of Pennsylvania and the Molecular Genetics Laboratory at New York University both performed BRCA1/2 genetic testing. *Id.* at ¶ 39; *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2114, 186 L. Ed. 2d 124, 131 (2013). In the late 1990s, however, Myriad sent cease-and-desist letters to these laboratories, threatening infringement lawsuits if they did not stop their genetic testing activities. Dkt. No. 1, Compl., ¶ 40. As a result, those laboratories stopped performing BRCA1/2 testing and analysis, and Myriad secured a monopoly for such services in the United States. *Id.*; *see Ass'n for Molecular Pathology*, 133 S.Ct. at 2114 ("Myriad also filed patent infringement suits against other entities that performed BRCA testing . . . . Myriad, thus, solidified its position as the only entity providing BRCA testing.").

### 2. The Supreme Court Invalidated Several of Myriad's Patent Claims Earlier this Year.

In 2009, the American Civil Liberties Union ("ACLU") and an organization called PubPat sued Myriad in the Southern District of New York, seeking a declaratory judgment that certain claims among the patents-in-suit were invalid (the

---

[2] Further citations to the "Wohlgemuth Dec." refer to the concurrently filed Declaration of Jay G. Wohlgemuth, M.D.

2

"ACLU case"). *See* Dkt. No. 1, Compl., ¶¶ 41-42. The ACLU alleged that Myriad used its patents to "control access" to the BRCA1/2 genes and prohibit others from offering BRCA1/2 gene testing. *Id.*; Ex. 1, ACLU Article at p. 1 ("The patents allowed a Utah company, Myriad Genetics, to control access to the genes, known as BRCA1 and BRCA2, thereby giving them the right to limit others from doing research or diagnostic testing of the genes . . . .").[3] That litigation ultimately led to a June 13, 2013 decision by the Supreme Court that invalidated certain claims in the BRCA1/2 patents-in-suit because they were directed toward isolated genes, which the Court held to be non-patentable under 35 U.S.C. §101. *Ass'n for Molecular Pathology*, 133 S.Ct. at 2120. The Supreme Court also suggested that claims of other Myriad-owned or licensed patents may be invalid on other grounds. *Id.* at 2119-20.

### 3. Myriad Aggressively Asserts Its Patents Even After the Supreme Court's Decision.

The Supreme Court's June 13, 2013 decision received wide public praise. Many commentators expected additional laboratories to begin offering BRCA1/2 testing as a result of the decision, leading to increased access for patients and decreased testing costs. *See* Ex. 2, Wall Street Journal Article at pp. 1, 2 (noting the "ruling [is] expected to quickly expand access to genetic testing" and quoting a researcher who explained "'[c]osts should come down considerably' and greater competition should 'improve the quality of genetic testing overall'"); Ex. 3, Bloomberg Article at p. 3 ("This will open up opportunity for other labs."). Several companies, including Quest, Ambry Genetics Corporation ("Ambry Genetics"), Gene by Gene Limited ("Gene by Gene"), GeneDX Inc. ("GeneDX"), and Pathway Genomics, announced that they intended to begin offering BRCA1/2 testing and analysis services shortly after the Supreme Court's decision. Ex. 4, Wall Street

---

[3] All exhibits are attached to the concurrently filed Declaration of Emmett J. McMahon, unless otherwise noted.

MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION

Journal Article of June 13, 2013 at p. 1; Ex. 5, Ambry Press Release; Ex. 6, Gene by Gene Press Release; Ex. 7, GeneDX Press Release; Ex. 8, Pathway Genomics Press Release.

After the Supreme Court decision, however, Myriad continued to threaten enforcement of its BRCA1/2 patent estate, including the patents previously before the Supreme Court.  On the same day that the Supreme Court issued its decision, Myriad boasted that it has "more than 500 valid and enforceable claims in 24 different patents conferring strong patent protection" for its BRCA1/2 test.  Ex. 9, Myriad Press Release, June 13, 2013 at p. 1. Myriad has also said that it will vigorously defend method claims that cover its BRACAnalysis testing against competitors who launch competing tests.  *See* Ex. 2 at p. 2 ("We believe the court appropriately upheld our claims on cDNA, and underscored the patent eligibility of our method claims, ensuring strong intellectual property protection for our BRACAnalysis test moving forward." (quoting Myriad Chief Executive Peter D. Meldrum)); Ex. 10, Myriad 2013 10-K at p. 37 ("Following the Supreme Court case, . . . we continue to have over 500 claims in 24 different patents which we believe confer strong patent protection for our BRACAnalysis testing and services."); Ex.11, Excerpt of Transcript of Myriad Quarterly Shareholder's Call, August 13, 2013 ("As you're aware, several laboratories have recently announced the availability of tests to compete with BRACAnalysis. We believe Myriad has a very strong intellectual property portfolio covering our BRACAnalysis test. We currently have a patent estate of 24 patents and over 500 claims that cover BRACAnalysis testing and which remain valid and fully enforceable.").

Myriad has followed through on its threats and has since aggressively asserted its patents against entrants into the commercial BRCA testing market.  It sued Ambry Genetics for patent infringement on July 9, 2013 shortly after the company began offering BRCA1/2 testing and analysis. The very next day, Myriad sued

4

Gene by Gene for patent infringement even *before* Gene by Gene made its BRCA1/2 test available. Ex. 12, Gene by Gene's Brief in Opposition to Motion for Preliminary Injunction at p. 79; Ex. 13, Mittelman Dec., ¶¶ 15-16. More recently, Myriad sued GeneDX on October 16, 2013, another company offering BRCA1/2 testing. Commentators speculated that Myriad would sue others. Ex. 14, Genome Web News Article ("Myriad's legal action against Ambry raises questions about whether other labs are also facing litigation risk.").

Myriad's litigious conduct has deterred other competitors from entering the market altogether. For example, Pathway Genomics announced plans to offer BRCA1/2 testing on June 15, 2013. Ex. 8. After Myriad filed suit against Ambry Genetics and Gene by Gene, however, Pathway Genomics delayed launching its BRCA1/2 tests. Ex. 15, Medscape.com Article at p. 2.

### B.   Quest Developed a Unique BRCA1/2 Genetic Test.

Quest is the world's leading provider of diagnostic information services. *See* Dkt. No. 1, Compl., ¶ 2. In 2009, researchers and scientists started developing a BRCA1/2 assay at Quest Diagnostics Nichols Institute ("Nichols Institute"), Quest's wholly-owned subsidiary located in San Juan Capistrano, California. Wohlgemuth Dec., ¶¶ 1, 4, 7. Nichols Institute spent thousands of hours researching and developing the BRCA1/2 assay almost exclusively in Orange County, California. *Id.* at ¶¶ 7-8. After the Supreme Court's June 13 decision, Quest announced publicly that it would offer its BRCA1/2 assay to the public in the near future. Ex. 4; Ex. 16, Quest Press Release of Oct. 15, 2013.

### C.   Quest Discussed BRCA1/2 Testing with Myriad.

Shortly after the Supreme Court decision, Wilson Conde, Quest's Vice President, Business Development, Alliances and Companion Diagnostics, asked Dr. Nicholas Conti to contact Myriad. *See* Declaration of Wilson Conde, ¶¶ 1-5

("Conde Dec.");[4] Declaration of Nicholas J. Conti, Ph.D., ¶ 5 ("Conti Dec.").[5] Although Mr. Conde did not believe Quest needed a license to the Myriad patents, he wanted Quest to explore a possible business resolution to avoid litigation. Conde Dec., ¶ 5. Dr. Conti reached out to Myriad's business development group. Conti Dec., ¶ 6. Dr. Conti disclosed his position with Quest and Quest's plans to enter the BRCA1/2 market. *Id.* Myriad told Dr. Conti that its business development group would be sending cease-and-desist letters to those entities that "think the [Supreme Court] decision means they can jump into the BRCA market." *Id.* Dr. Conti reported this conversation to Mr. Conde. *Id.*; Conde Dec., ¶ 6. Both understood that Myriad would send cease-and-desist letters to any company, including Quest, that tried to enter the market, just like it threatened or sued other competitors in the commercial BRCA market for well over 12 years. Conde Dec., ¶¶ 3, 6; Conti Dec., ¶¶ 3, 6.

Dr. Conti also spoke with Sam LaBrie, Vice President of Corporate Development at Myriad subsidiary, Myriad RBM, in another attempt to explore a possible business resolution in order to avoid litigation. Conti Dec., ¶ 7. Dr. Conti and Mr. LaBrie specifically discussed Quest's plans to launch a BRCA1/2 test and the validity of Myriad's patents following the Supreme Court decision. *Id.* at ¶¶ 7-8. Mr. LaBrie said that Myriad's patent portfolio was strong and would continue to be enforced and echoed the message Dr. Conti already heard from Myriad—that Myriad would send cease-and-desist letters to entrants into the BRCA testing market. *Id.* at ¶¶ 8-9.

Indeed, Myriad had sued BRCA market entrants and, in some cases, anticipated entrants. Myriad filed suit against Ambry the very same day that Dr. Conti and Mr. LaBrie discussed Quest's future plans to enter the BRCA market.

_____

[4] Further citations to the "Conde Dec." refer to the concurrently filed Declaration of Wilson Conde.
[5] Further citations to the "Conti Dec." refer to the concurrently filed Declaration of Nicholas J. Conti, Ph.D.

Conti Dec., ¶ 11.  Myriad sued Gene by Gene the next day, even though Gene by Gene hadn't yet launched a test. *Id.* at ¶ 12; Ex. 12 at p. 79; Ex.13, at ¶¶ 15-16. Those quickly-filed lawsuits reinforced the message Myriad had already delivered to Quest—that Myriad would assert its patents against any entrant into the commercial market. Conde Dec., ¶ 9; Conti Dec., ¶ 13.

### D.   Quest Filed the California Action and Entered the BRCA1/2 Testing Market.

Quest planned to offer its BRCA1/2 assay, known as BRCAvantage™, to the public on October 15, 2013.  Ex. 16.  Based on Myriad's confrontational statements to Quest and the public, the disclosures to Myriad that Quest was developing an assay, and Myriad's litigious history with respect to competitors in the BRCA testing market, Quest knew there was a substantial controversy between the two companies. Conti Dec., ¶¶ 10, 13; Conde Dec., ¶ 9. Consequently, on October 10, 2013, when the assay was ready for commercial launch, Quest filed this action against Myriad ("the California action"), seeking a declaratory judgment of noninfringement and invalidity of fourteen Myriad patents relating to BRCA testing. *See* Dkt. No. 1, Compl.  On October 15, Quest launched BRCAvantage™ as planned. Ex. 16; Wohlgemuth Dec., ¶ 9.

### E.  Myriad Filed a Duplicative Action in Utah.

Twelve days after Quest filed the California action, on October 22, 2013, Myriad[6] filed a lawsuit in the United States District Court for the District of Utah ("the Utah action"), accusing Quest of infringing eight of the fourteen patents at issue in the California action.  On that same day, Myriad told Quest that it did not have sufficient information to determine whether the other six patents named in this action were infringed, and asked Quest for more information about its assay. Ex. 17, Myriad Letter to Quest.  One day after Quest responded that the information

---

[6] In addition to Myriad, the Utah action also lists the University of Utah Research Foundation, the Trustees of the University of Pennsylvania, HSC Research and Development Limited Partnership, and Endorecherche, Inc. as plaintiffs.

MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION

would be made available in discovery in this action, Myriad amended the Utah complaint to allege infringement of those six other patents, although it admittedly lacked information to determine whether those patents were infringed.  Ex. 18, Myriad's Amended Complaint. This is consistent with Myriad's pattern of immediately bringing suit against any BRCA competitor without first investigating infringement, as evidenced by the fact that it sued Gene by Gene before it launched its BRCA product.

## III.  ARGUMENT

This Court's declaratory jurisdiction is proper and should not be disturbed. Myriad's conduct, statements, and its own arguments demonstrate that jurisdiction exists.  Myriad's argument that this case should be transferred to Utah should also be rejected.  Quest's assay was developed almost exclusively in this district and virtually all of the witnesses and evidence regarding Quest's non-infringement of Myriad's patents are located here.

### A.   Jurisdiction in this Court is Proper.

#### 1.   Myriad Does Not Challenge This Court's Subject Matter Jurisdiction.

Declaratory judgment jurisdiction is present when "the facts alleged, under *all the circumstances*, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 771, 166 L. Ed. 2d 604, 615 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941) (emphasis added)).  There is no rigid rule or litmus test.  *See, e.g.*, *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008) (finding that a patent holder's pattern of enforcing patents through litigation supported declaratory judgment jurisdiction under the totality of the circumstances).

Myriad admits the existence of a substantial controversy with Quest regarding

1   BRCA 1/2.  *See* Dkt. No. 20-1 at 11 ("There was no question that Quest believed
2   Myriad would enforce its patent rights against Quest . . . .  Indeed, Myriad did just
3   that on October 22 . . . ."").  Myriad's characterization of the fourteen-week time
4   period leading up to Quest's filing of this action as a "race to the courthouse"
5   demonstrates further that Myriad was preparing to sue Quest and that a substantial
6   and sufficiently immediate controversy existed between the parties.

7       Evidence demonstrating the existence of a substantial controversy does not
8   end with Myriad's admissions in this case.  Myriad has a long litigious history and
9   boasts to its investors that, as its standard procedure, it aggressively targets
10  competitors seeking to enter the BRCA testing market, and indeed, has sued one
11  after the other for patent infringement. *See* Section II(A)(3), *supra.*  Quest watched
12  Myriad's litigious behavior unfold for years, and saw the number of lawsuits
13  increase just as Quest was preparing to enter the BRCA testing market. Conde Dec.,
14  ¶¶ 7-9; Conti Dec., ¶¶ 11-13.  As a result, Quest, like others in the BRCA market,
15  justifiably feared that Myriad would bring suit if it launched a competing BRCA
16  test. *See Monolithic Power Sys., Inc. v. Micro Int'l Ltd.*, No. 07-cv-2363, 2007 U.S.
17  Dist. LEXIS 61961, at *9-10 (N.D. Cal. Aug. 13, 2007) (stating that prior lawsuits
18  by patentee suggested "an assertion of rights and a willingness to pursue litigation")
19  (citing *Cingular Wireless LLC v. Freedom Wireless, Inc.*, 2007 U.S. Dist. LEXIS
20  47957, at *3 (D. Ariz. 2007)).

21      Despite its admissions and argument that demonstrate the existence of
22  jurisdiction, Myriad appears to suggest that because it allegedly did not overtly
23  communicate its intention to sue Quest, there is no jurisdiction.  Putting aside the
24  evidence that such an intention was communicated, (see Dkt. No. 1, Compl., ¶ 64;
25  Conde Dec., ¶¶ 6, 9; Conti Dec., ¶¶ 6, 9-10, 13), the Supreme Court has been
26  crystal clear that no overt act is required to establish jurisdiction.     Rather,
27  jurisdictional analysis must focus on the totality of the circumstances. *MedImmune*,

28

549 U.S. at 127. Here, the totality of the circumstances demonstrates the existence of jurisdiction.

Having invested considerable time and resources in developing its novel BRCA1/2 assay, Quest contacted Myriad to determine whether the two companies could discuss licensing or cross-licensing in order to avoid litigation.  Conde Dec., ¶ 5; Conti Dec., ¶ 5.  Myriad does not dispute that Dr. Condi and Mr. LaBrie discussed Quest's plans regarding BRCA testing. *See* Dkt. No. 20-1 at pp. 6-7. Instead, Myriad attempts to downplay that conversation by speculating about Quest's motives for contacting Myriad and inferring that Quest's reliance on Myriad's statements was unreasonable.  *See* Dkt. No. 20-1 at pp. 6-7.

Although Quest's jurisdictional allegations in the Complaint are sufficient on their face, Quest presents additional facts in response to Myriad's claim that Quest contacted Myriad in an attempt to "manufacture declaratory judgment jurisdiction." Dkt. No. 20-1 at p. 1; *see* Conde Dec., ¶¶ 5-6; Conti Dec., ¶¶ 5-10.  Specifically, during discussions with Myriad, Quest expressly discussed its plans to enter the BRCA testing market.  Conti Dec., ¶ 6. Quest also described the product it was developing, explaining that its BRCA assay would include a method of testing known as "large rearrangements" – potentially differentiating itself from Myriad's offerings at the time. *Id.* at ¶ 7; Wohlgemuth Dec., ¶ 9.  Myriad not only rebuffed Quest, but it also stated that cease and desist letters would be sent to any entrants into the market. Conti Dec., ¶¶ 6-7; Conde Dec., ¶ 6.

The statements by Mr. LaBrie and the Myriad business development group, coupled with Myriad's long-standing litigious pattern of enforcing its patents and its public statements regarding enforceability of its patent claims, demonstrate the existence of a real and substantial controversy and that Quest had a reasonable apprehension that Myriad would sue it for patent infringement.  *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1270 (Fed. Cir. 1998)

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION

(attributing statements made by company regarding the strength of patent portfolio and plans to assert patents to another company where two companies had parent-subsidiary relationship); *see Micron Tech.*, 518 F.3d at 901 (finding that a pattern of litigious conduct, combined with the possibility of litigation and public statements by the patent holder confirming that it would aggressively assert its patents in litigation against competitors, "amply support[ed] a real and substantial dispute between [the] parties").

Quest faced a Hobson's choice: either launch its new BRCAvantage™ product and risk provoking a patent infringement lawsuit, or abandon the product. Congress enacted the Declaratory Judgment Act to avoid this exact scenario.  As the Federal Circuit has explained,

> [t]he Declaratory Judgment Act exists precisely for situations such as this. The purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights.

*Micron Tech.*, 518 F.3d at 902 (quoting *Goodyear Tire & Rubber Co v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) (internal quotation marks omitted)).  *See also Guthy-Renker Fitness, LLC v. ICON Health & Fitness, Inc.*, 179 F.R.D. 264, 272 (C.D. Cal. 1998) ("[A] declaratory action is an appropriate vehicle to alleviate the necessity of waiting indefinitely for a patent owner to file an infringement action.") (internal quotation and citation omitted).

Because the totality of circumstances shows that a substantial controversy between the parties existed (and continues to exist), this Court has jurisdiction over this dispute.

### 2.    This Court Should Exercise Jurisdiction over this Case.

Recognizing that it cannot legitimately challenge this Court's jurisdiction, Myriad asks this Court to disregard the long-standing first-to-file rule and dismiss Quest's suit in favor of its own second-filed suit in Utah. There is no basis for this

Court to dismiss Quest's properly filed suit.

### a. The First-to-File Rule Applies and Therefore the California Action is Favored Over the Utah Action.

The first-to-file rule mandates that "[i]n cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. McIver*, 22 U.S. 532, 535 (1824). The Federal Circuit has confirmed that the first-to-file rule applies in patent cases. *See Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 289, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995) ("We prefer to apply in patent cases the general rule whereby the forum of the first-filed case is favored."). "The general rule favors the forum of the first-filed action, whether or not it is a declaratory action." *Genentech*, 998 F.2d at 937; *see Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1348 (Fed. Cir. 2005) ("The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action." (quoting *Genentech*, 998 F.2d at 938)). The first-to-file rule unquestionably applies to this declaratory judgment action.

Both the Federal Circuit and Ninth Circuit direct that the first-filed rule should be applied here. The Federal Circuit applies a general rule that the first-filed case is favored. *Genentech*, 998 F.2d at 937. The Ninth Circuit examines three factors in determining whether to apply the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625-26 (9th Cir. 1991).

The California action meets all three factors. The first factor is met because Quest filed the California action twelve days before Myriad filed the Utah action. The second factor is met because both the California and Utah actions involve the same primary parties: Quest Diagnostics Incorporated, Quest Diagnostics Nichols Institute, and Myriad. While the Utah action lists four additional plaintiffs, exact identity of parties is not required. *Inherent.com v. Martindale-Hubbell*, 420

12

F.Supp.2d 1093, 1097 (N.D. Cal. 2006). The first-to-file "rule is satisfied if some of the parties in one matter are also in the other matter." *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008)[7]. The third factor is met because the issues raised in the California and Utah actions are identical. *See* Section II(E), *supra*; Dkt. No. 20-1 at p. 8 (describing the California and Utah actions as "duplicative"). Accordingly, the first-to-file rule applies and dictates that Quest's first-filed action in California should take precedence over Myriad's second-filed suit in Utah.

### b. No Exception to the First-to-File Rule Applies to the Facts of This Case.

Myriad asks this Court to decline jurisdiction because the California action is an improper "anticipatory" suit, was filed in "bad faith" or constitutes forum shopping. *See* Dkt. No. 20-1 at pp. 10-13. Myriad is wrong. No exception to the first-filed rule exists in this case.

The Federal Circuit has instructed that "[w]hen there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstances the declaratory judgment is not subject to dismissal." *Genentech*, 998 F.2d at 937. There must be "well-founded reasons" and a "sound basis for refusing to adjudicate an actual controversy." *Id.*; *Elecs. for Imaging*, 394 F.3d at 1345. The first-to-file rule "should not be disregarded lightly." *Church of Scientology v. U.S. Dep't. of the Army*, 611 F.2d 738, 750 (9th Cir. 1979).

### i. Quest Did Not File an Anticipatory Suit.

A suit is anticipatory when the plaintiff in the first-filed action "file[s] suit on

---

[7] Myriad identifies other parties that purportedly have interests in the patents, but also claims that it is the exclusive licensee to those other patents. Dkt. No. 20-1 at pp. 15-16. Those parties are not required in this case because they did not threaten Quest, and this declaratory judgment action can nevertheless proceed against an exclusive licensee. *Dainippon Screen Mfg. v. CFMT*, 142 F. 3d 1266 (Fed. Cir. 1998).

receipt of *specific, concrete indications* that a suit by the defendant [is] *imminent*." *Intersearch Worldwide*, 544 F. Supp. 2d at 960 (quoting *Guthy-Renker Fitness*, 179 F.R.D. at 217) (emphasis added). A suit is usually anticipatory when the plaintiff *knows* that the other party is planning to file suit *at a particular time. Inherent.com*, 420 F. Supp. 2d at 1099-1100 (deeming suit anticipatory because letter specifically stated that suit would be filed within five days if settlement was not reached, and party filed suit on fifth day).

Quest had no specific, concrete indication that Myriad would imminently file suit, and there is no evidence that Quest's suit is "anticipatory." Instead, Myriad has confused the legal standard for establishing declaratory jurisdiction (which can be satisfied by showing a *reasonable apprehension* of suit) with the standard for proving a suit was anticipatory (which requires receipt of concrete indications that a suit was *imminent*). As this Court previously made clear, "a declaratory plaintiff in a patent infringement action may properly initiate suit where the totality of circumstances reveal a reasonable belief that defendant will commence an infringement suit against it, but these factors may well fall short of the imminent suit requirement . . . ." *Guthy-Renker Fitness*, 179 F.R.D. at 280; *Intersearch Worldwide*, 544 F. Supp. 2d at 960-61 ("[A] reasonable apprehension that a controversy exist[s] sufficient to satisfy the constitutional requirements for a declaratory judgment action . . . is not equivalent to an imminent threat of litigation.") (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1137 (11th Cir. 2005)).

None of Myriad's cases are applicable.  For example, in *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006), this Court dismissed a declaratory judgment action where the plaintiff was "warned from the outset" that failure to execute a proposed settlement agreement and comply with its terms "by the specified deadlines" would result in litigation. Similarly, in *Ven-Fuel, Inc. v.*

14

*Department of Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982), the 11th Circuit Court of Appeals upheld dismissal of suit filed by plaintiff in "anticipation of *imminent* judicial proceedings" by the Government for plaintiff's failure to pay assessed penalties. Myriad's reliance on *Teledyne Techs., Inc. v. Harris Corp.*, No. 11-cv-00139, 2011 U.S. Dist. LEXIS 71370, at *7 (C.D. Cal. July 1, 2011) is also misplaced because in that case, this Court dismissed a suit in which the plaintiff was told it would be the defendant's "next litigation target." Lastly, in *First Fishery Dev. Serv. v. Lane Labs USA*, No. CIV 97-1069, 1997 U.S. Dist. LEXIS 11231, at *9 (S.D. Cal. July 21, 1997), the court found that the suit was the product of anticipatory forum shopping because the plaintiff was given a copy of the defendant's draft complaint and "knew with utter certainty that defendant would file its suit on July 6, 1997." Here, there is no evidence that Quest knew litigation would commence on a certain day or month, only that Myriad intended to bring suit against any entrant into the commercial BRCA market, including Quest. Conde Dec., ¶ 6; Conti Dec., ¶ 10.

Myriad argues that Quest "rushed to this Court to seek declaratory relief" following the conversation between Dr. Conti and Mr. LaBrie. Dkt. No. 20-1 at 1. The undisputed facts, however, are that Quest did not file this suit for *fourteen weeks* after Dr. Conti's conversations with Myriad representatives. Myriad does not cite any authority—and Quest is aware of none—where a court found that a fourteen-week period constituted an improper "race to the courthouse." *See, e.g.*, *Sony Computer Entm't Am. Inc. v. Am. Med. Response, Inc.*, No. C06-06603, 2007 U.S. Dist. LEXIS 24294, at *9-10 (N.D. Cal. March 13, 2007) (finding that anticipatory suit exception *did not apply* where plaintiff filed suit only *one day* after parties settlement negotiations had ended). Indeed, during that fourteen-week period, Myriad could have chosen to sue Quest in its preferred forum—as it did against Gene by Gene before its product launch—but did not.

15

### ii.    Quest Did Not File the California Action in Bad Faith.

Quest did not file the California action in "bad faith."  "Bad faith is evident when the plaintiff in the first action induces the other party to, in good faith, rely on representations made by the plaintiff that it will not file first in order to preempt the other party from filing suit in its preferred forum." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Payless ShoeSource, Inc.*, No. 11-cv-1892, 2012 U.S. Dist. LEXIS 112346, at *21 (N.D. Cal. Aug. 9, 2012).  In other words, Myriad must show that Quest induced Myriad not to file suit.

There is no evidence or allegation supporting such a claim. Quest made public statements that it would be offering BRCA testing and told Myriad that it was developing a BRCA test that would include large rearrangements. Conti Dec., ¶ 7; Ex. 4. There is no evidence that Quest enticed Myriad to delay bringing suit.  Quest simply exercised its right to file a declaratory judgment action before Myriad brought its claims in the Utah action. *Nat'l Union Fire Ins. Co.*, 2012 U.S. Dist. LEXIS 112346, at *21 ("Filing first to establish tactical advantage over the defendant is not 'bad faith.'").  Again, Myriad could have sued Quest any time during the fourteen-week period after the parties' business discussions, but did not.

### iii.   Quest Is Not Forum Shopping.

This suit is not the product of forum shopping.  Plaintiff Nichols Institute is incorporated in California and located in San Juan Capistrano.  Dkt. No. 1, Compl., ¶ 3; Wohlgemuth Dec., ¶ 4. "A plaintiff's decision to sue in the forum where its company is based does not amount to impermissible forum shopping." *Cardoza v. T-Mobile USA Inc.*, No. 08-5120, 2009 U.S. Dist. LEXIS 25895, at *3 (N.D. Cal. Mar. 18, 2009).

Moreover, Quest has substantial connections to this forum, and a significant portion of the events relevant to this suit occurred here. Wohlgemuth Dec., ¶¶ 5, 8-9, 11-18 (explaining that Quest employs over 1000 people in this forum, that

Quest's BRCAvantage™ test was developed in this forum, Quest performs the BRCAvantage™ test in this forum, and documents related to Quest's BRCAvantage™ test are located in this forum); *see also* Sections III(B)(1) – III(B)(3), *infra*. Quest cannot be accused of forum shopping given its strong connection to Orange County. *See Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011) (suggesting that the selection of a forum with no relevance to the action would indicate forum shopping); *see also K&F Mfg. Co. v. Western Litho Plate & Supply Co.*, 831 F. Supp. 661, 663 (N.D. Ind. 1993) (observing that advent of uniform appellate jurisdiction over patent cases "substantially discounts concern about forum shopping").

Because this lawsuit was not anticipatory, was not filed in bad faith, and was not the result of forum shopping, no exceptions to the first-to-file rule apply. This Court should therefore retain jurisdiction over this case.

c.    **The Convenience Factors Do Not Weigh in Favor of Dismissing this Action.**

Myriad also argues that convenience factors militate against applying the first-to-file rule. Dkt. No. 20-1 at 13-16.  Again, Myriad's position is contrary to the law and should be rejected.

Before a court may decline jurisdiction, there must be "*sound reasons* that would make it unjust or inefficient to continue the first-filed action" *Genentech*, 998 F.2d at 938 (emphasis added). There are no such sound reasons in this case.

Here, the most important factor—the convenience of the parties and witnesses—weighs heavily in favor of proceeding in California and not Utah. *Digitech Image Techs., LLC v. Leica Camera AG*, No. SACV12-01677, 2012 U.S. Dist. LEXIS 172959, at * 6 (C.D. Cal. Dec. 5, 2012) ("[T]he most important factor in [the] transfer analysis is the convenience of parties and witnesses.").

Nichols Institute is a California company and its headquarters are located in this forum. *See* Dkt. No. 1, Compl., ¶ 3;Wohlgemuth Dec., ¶¶ 1, 4. Most witnesses

and the bulk of relevant evidence concerning non-infringement are located in *this* forum. Quest's BRCAvantage™ test was developed in this district and is performed exclusively in California. Wohlgemuth Dec., ¶¶ 8-9, 11-18. Documents and evidence concerning Quest's BRCAvantage™ test, which Myriad claims infringes its patents, are located in California. Id. at ¶¶ 8, 11-17. As this Court has previously noted, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the [accused infringer's] documents are kept weighs in favor of transfer to that location." *A10 Networks, Inc. v. Brocade Comms., Inc.*, SACV11-01378, 2011 U.S. Dist. LEXIS 155697, at *11 (C.D. Cal. Nov. 8, 2011). Likewise, many of Quest's witnesses, including the lead and principal scientist, project manager, technical lead, the validation scientists and many other persons specifically identified in the Declaration of Jay Wohlgemuth, MD, are located here in Orange County, California. Wohlgemuth Dec., ¶¶ 11-15.  Their documents are also here.  *Id.*

Myriad claims incorrectly that "nearly all of the relevant witnesses are located in Utah" because "five of the inventors named on the patents" are located there. Dkt. No. 20-1 at 15.  Myriad, however, does not address the fact that the patents-in-suit name a total of 34 inventors. *See* Dkt. No. 1 and attached exhibits 1-14. Simply because five out of 34 inventors might reside in Utah does not make Utah a more convenient forum.

Although lawsuits pending in Utah involve some of the patents-in-suit, the possibility of consolidation with those suits in Utah does not weigh in favor of dismissing this case. *Genentech*, 998 F.2d at 938 (listing the possibility of consolidation as one factor that may be considered in deciding to exercise jurisdiction). The other Utah cases are still in their infancy.  The earliest case against Ambry Genetics started in July of 2013 – only four months ago. Myriad, which has the burden of proof on this motion, has not shown that the Utah court has

1    any extensive familiarity with the patents that might constitute special knowledge

2    or a "head start" on substantive analysis relevant to this lawsuit.

3        Moreover, the infringement issues in those cases will be different than the

4    infringement issues in this case because there are fundamental differences between

5    Quest's test and those employed by other defendants.  Based on the information

6    available, Quest understands that those defendants' assays use Sanger sequencing,

7    whereas Quest's BRCAvantage™ assay does not use Sanger sequencing.

8    Wohlgemuth Dec., ¶ 10. Accordingly, the infringement issues in this case will be

9    different.

10       While the Utah court has received briefing and heard oral argument on

11   Myriad's motions for preliminary injunctions against two defendants, that record

12   relates to different defendants, different technology, and different infringement

13   theories. The parties to the Utah cases have not exchanged infringement and

14   invalidity contentions, nor have they disclosed proposed constructions for claim

15   terms in dispute. No fact or expert discovery has taken place in those cases. The

16   Utah court's posture contrasts starkly with other situations in which courts

17   dismissed or transferred cases to other jurisdictions because of the transferee court's

18   familiarity or extensive experience with the patents.  *E.g.*, *In re Eli Lilly and Co.*,

19   No. 13-164, slip op. at 3 (Fed. Cir. Oct. 18, 2013) (affirming district court's transfer

20   of case to Central District of California because "it had already conducted

21   discovery, claim construction, and ruled on motions for summary judgment

22   involving the same family of patents") (filed at Dkt. No. 20-27).[8] The Utah court

23

24   ---

[8] In what can be described only as an attempt to end-run around this Court's proper
consideration of its motion, Myriad filed a Motion to Transfer before the Judicial
25   Panel on Multidistrict Litigation on November 8, 2013. While Quest plans to
oppose consolidation, it will argue in the alternative that, if consolidation is
26   warranted, the matters should be consolidated in this judicial district. This Court's
relative expertise with patent cases versus the District of Utah, its much faster
27   median time to trial (19.6 versus 38.8 months), its adoption of local patent rules and
its participation in the Patent Pilot Program, the infancy of the Utah cases, and the
fact that more than half the defendants are located in California, among other
28   things, argue in favor of a transfer, if any, to this Court.

has no such extensive experience.

Because the convenience factors weigh heavily in favor of this jurisdiction, this Court should deny Myriad's request to decline jurisdiction.

### B.   The Proper Venue for this Suit is in California, and Therefore the Case Should Not be Transferred under 28 U.S.C. § 1404 to Utah.

The Central District of California is the proper venue to resolve the disputes between Quest and Myriad, and therefore this Court should deny Myriad's request to transfer this case to Utah.

The moving party bears the burden of showing that a transfer under 28 U.S.C. § 1404 is appropriate. *Inherent.com*, 420 F. Supp. 2d at 1098. Courts use a two-step analysis to determine whether a transfer is proper: (1) could the action have been brought in the transferee forum, and (2) if so, do the convenience factors warrant transfer of the case to another venue. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Quest does not dispute that this action could have been brought in the U.S. District Court for the District of Utah. Thus, only the convenience factors need be examined.

In addition to the factors listed in § 1404 (the convenience of parties and witnesses and the interests of justice), the Ninth Circuit has instructed that other factors may be considered in making the determination of whether to transfer venue, including: (1) the plaintiff's choice of forum; (2) ease of access to the evidence; (3) familiarity of each forum with the applicable law; (4) feasibility of consolidation of other claims; (5) any local interest in the controversy; and (6) relative court congestion and the time to trial in each forum. *Decker Coal*, 805 F.2d at 843; *Jones v. GNC Franchising*, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).  As shown below, these factors weigh in favor of maintaining venue in California.

### 1.   The Convenience of the Parties and Witnesses Favors California.

For the reasons discussed in Section III(A)(2)(c), above, the convenience of the parties and witnesses weighs strongly in favor of this forum. Plaintiff Nichols

Institute is located in this forum; many of Quest's fact witnesses and nearly all of Quest's corporate witnesses are located in California; Quest's BRCAvantage™ test was developed in this forum; and Quest's allegedly infringing activity occurs at the Nichols Institute because it receives all patient samples for BRCAvantage™, performs all necessary BRCAvantage™ analysis, and reports all BRCAvantage™ lab results. Wohlgemuth Dec., ¶¶ 4-5, 8-9, 11-17.

Myriad did not identify any key witnesses or provide a generalized statement of their testimony, as a party is obligated to do when seeking transfer. *Secured Mail Solutions, LLC v. Advanced Image Direct, LLC*, SACV 12-0190, 2013 U.S. Dist. LEXIS 150785, at *14 (C.D. Cal. Jan 20, 2013). Myriad's broad assertion that five of 34 inventors on the patents-in-suit are located in Utah is legally insufficient.[9] Although Myriad failed to identify specific witnesses and the subject matter of their expected testimony, Quest has come forward with a Declaration of Dr. Jay Wohlgemuth that makes that showing on its behalf. Wohlgemuth Dec., ¶¶ 4-5, 8-9, 11-17. Clearly, the convenience of the witnesses and parties strongly favors California.

## 2. Quest's Choice of Forum Should Be Given Strong Deference.

Unless the balance of section 1404(a) factors "is *strongly* in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed." *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) (emphasis added). The fact that plaintiff Nichols Institute resides in this forum, and that there is a significant connection between California and Quest's development and sale of its BRCAvantage™ test, weighs in favor of strong deference to Quest's choice of forum. *Easton-Bell Sports, Inc. v. E.I. Dupont de Nemours & Co.*, No. 13-

---

[9] It is also unclear from Myriad's motion whether any of these five inventors are employed by Myriad – a further fact relevant to the Court's inquiry. *Expert Microsystems, Inc. v. Univ. of Chicago Arch Dev. Corp.*, No. CIV. 09-586, 2009 U.S. Dist. LEXIS 68782, at *10-11 (E.D. Cal. Aug. 5, 2006) ("[T]he convenience of party witnesses does not weigh as heavily as that of non-party witnesses.").

cv-283, 2013 U.S. Dist. LEXIS 43832, at *20 (N.D. Cal. March 26, 2013) (affording substantial weight to plaintiff's choice of forum because plaintiff filed suit in forum where it was located); *Digitech Image Techs., LLC v. Leica Camera AG*, No. SACV12-01677, 2012 U.S. Dist. LEXIS 172959, at * 6 (C.D. Cal. Dec. 5, 2012) ("A plaintiff's choice of forum should be given substantial weight, and this weight is only reduced if the plaintiff does not reside in that district").

### 3.   The Ease of Access to the Evidence Favors California.

The location of witnesses and relevant evidence in Orange County weighs strongly in favor of this forum. As this Court has explained, "in patent infringement cases, the preferred forum is that which is the center of gravity of the accused activity." *A10 Networks*, 2011 U.S. Dist. LEXIS 155697, at *9. This is because "the bulk of the relevant evidence usually comes from the accused infringer" – in this case, Quest. *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009). The evidence concerning Quest's accused products is located in this forum, and therefore this factor favors California over Utah. Wohlgemuth Dec., ¶¶ 8, 11-17.

### 4.   This Forum is More Familiar with the Applicable Law.

This Court is a member of the Patent Pilot Program, which Congress developed to "encourage enhancement of expertise in patent cases among district judges." Pilot Program in Certain District Courts Act of 2010, Pub. L. No. 111-349 § 1, 124 Stat. 3674 (2011); *see* H.R. 628, 111th Cong. (1st Sess. 2009). Thus, the Patent Pilot Program, by design and the intent of Congress, brings an expertise in patent law to this Court. Moreover, Your Honor is a participant in the Patent Pilot Program and has adopted specific rules "to reduce transaction costs and increase procedural predictability." Ex. 19, Hon. Andrew J. Guilford Standing Patent Rules at p. 1. This Court's goal of fair and efficient adjudication of patent claims and its adoption of best practices to achieve that goal weigh against transfer from this forum to the District of Utah, which does not participate in the Patent Pilot

Program. *See Compression Tech. Solutions LLC v. EMC Corp.*, No. 4:11-cv-1579, 2012 U.S. Dist. LEXIS 48887 (E.D. Mo. April 6, 2012); *Datatreasury Corp v. Capital One Fin, Corp.*, No. 6:11-cv-92, U.S. Dist. LEXIS 114453 (E.D. Tex. Jan 7. 2012).

### 5.   The Possibility of Consolidating This Case with Other Patent Infringement Actions in Utah Does Not Favor Transfer.

Myriad has not made any showing that consolidation with the Utah defendants will provide advantages to efficiency or judicial resources. Myriad does not address the fact that Quest's non-infringement position differs from the other defendants. Fundamental differences among the various accused assays will require separate analyses, experts and legal argument. *See* Wohlgemuth Dec., ¶ 10. Moreover, Ambry Genetics and Gene by Gene asserted antitrust counterclaims against Myriad, a complicating factor that is not present in this case. *See* Ex. 20, Ambry Answer; Ex. 21, Gene By Gene Answer. Given these differences, consolidating this case with other cases will not provide any advantage.

### 6.   Local Interests in This Controversy Favor This Forum.

Nichols Institute is a California corporation. California has a strong interest in providing corporations based in this state with a forum and means for adjudicating disputes when those companies are faced with possible liability for their allegedly infringing conduct and fear being sued. Moreover, this controversy will allow for more competition in the BRCA testing market, which will drive down pricing and make genetic cancer screening more affordable to the people in this district. Accordingly, this factor weighs in favor of maintaining venue in California.

### 7.   This Forum Is Less Congested than Utah.

"The state of the trial calendars in the two potential forums can be a factor in determining the more appropriate venue." *Catch Curve, Inc. v. Venali, Inc.*, No. CV 05-04820, 2006 U.S. Dist. LEXIS 96379, at *10 (C.D. Cal. Feb. 27, 2006) (citing *Kasey v. Molybdenum Corp.*, 408 F.2d 16, 20 (9th Cir. 1969)). The median time for

a case to reach trial in the Central District of California is 19.6 months, as opposed to 38.8 months for the District of Utah.  Ex. 22, Table of Median Time Intervals from Filing to Disposition in U.S. District Court. This district is better suited to hear this case more expeditiously than the District of Utah, and convenience to the parties supports denying Myriad's request to transfer.

## IV.  CONCLUSION

For the reasons stated above, Myriad's motion to dismiss or transfer this action should be denied and this Court should exercise jurisdiction over Quest's properly filed declaratory judgment action.


November 25, 2013                    Respectfully submitted,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


By:   /s/ David Martinez
      DAVID MARTINEZ

      Attorneys for Plaintiffs
      QUEST DIAGNOSTICS
      INCORPORATED and QUEST
      DIAGNOSTICS NICHOLS INSTITUTE